IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-046 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Christopher Jones ("Plaintiff") appeals the decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.     BACKGROUND**

Plaintiff applied for DIB on September 26, 2011, alleging a disability onset date of October 1, 2010. Tr. ("R"), p. 115. The Social Security Administration denied the application initially and on reconsideration. R. 72-73. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 85, which was held on April 24, 2013. R. 41-71. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by

counsel, and Roger Decker, a Vocational Expert ("VE"). Id. On June 25, 2013, the ALJ issued an unfavorable decision. R. 20-36.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 1, 2010, the alleged onset date (20 C.F.R. § 404.1571 *et seq*.).

2. The claimant has the following severe impairments: posttraumatic stress disorder ("PTSD"), major depressive disorder, degenerative disc disease, degenerative joint disease ("DJD"), and alcohol abuse (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b).[1] In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. He can sit for approximately 6 hours of an 8-hour workday with normal breaks. However, the claimant is limited to standing and walking for four hours in an eight-hour workday and must use a cane to ambulate on uneven terrain and for long distances. The claimant is limited to frequent balancing and occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. He cannot climb ladders, ropes, or scaffolds and needs to avoid concentrated exposure to noise and hazards. The claimant is able to perform simple tasks, but cannot perform detailed or complex tasks. He can work in a low-stress environment, which I have defined as requiring only occasional

---

[1]"Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

2

       decision making, occasional adaptation to changes in the work setting, and no high production paced tasks such as high volume assembly line work. The claimant can have superficial contact with the public, but should not perform any counter work, customer service, or sales. He can work in proximity with others, but would do best in more solitary work tasks. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including assembler II, assembler of nuts and bolts, and assembler in small parts (20 C.F.R. §§ 404.1569 and 404.1569(a)). The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2010, through June 25, 2013 (the date of the ALJ's decision) (20 CFR 404.1520(g)).

R. 22-35.

When the Appeals Council denied Plaintiff's request for review on December 16, 2013, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is erroneous because the ALJ improperly (1) misconstrued the basis for Plaintiff's Veterans Affairs ("VA") disability rating, and failed to give this rating great weight, and (2) erred in rejecting Plaintiff's subjective complaints of pain by failing to give opinions of experts proper weight and relying too heavily on mundane activities of daily living. (See generally doc. no. 10 ("Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 11 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145

(11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal

4

conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ Properly Addressed the VA Disability Rating.

At step four of the sequential evaluation process, the ALJ found that Plaintiff could perform less than the full range of light work and noted several physical restrictions. R. 24-25. As part of his RFC determination, after thoroughly exploring Plaintiff's medical records, the ALJ discussed Plaintiff's 100% disability rating by the VA in the fall of 2011. R. 145-163. In addressing the disability rating, the ALJ stated that the VA's disability determination was not binding on the Social Security Administration because the VA's determination is based on its own rules and not Social Security law. Id. at 32. The ALJ further stated that the VA rating appeared to be based on opinions of the claimant's treating physicians, Drs. Georgia Lou Huff and Jianhua Cheng, to which the ALJ gave some weight. Id. at 32-33. Plaintiff contends that the ALJ failed to indicate what weight she assigned to the VA disability rating and she incorrectly rejected the VA rating because she erroneously believed the VA relied on Plaintiff's treating physicians to make this opinion. (Pl's Br., pp. 20-21.)

Although the decision of another agency is not binding on the Commissioner, the Eleventh Circuit has held that an award of disability benefits from the Department of Veterans Affairs should be given great weight. Hacia v. Comm'r of Soc. Sec., No. 14-13504, 2015 WL 408186, at *2 (11th Cir. Feb. 2, 2015); Kemp v. Astrue, 308 Fed. Appx. 423, 426 (11th Cir. 2009) (("A VA rating is certainly not binding on the Secretary, but it is

5

evidence that should be considered and is entitled to great weight."); see 20 C.F.R. § 404.1504. If an ALJ rejects a VA disability rating or gives a VA rating less than considerable weight, he must provide sufficient justification for doing so. Hogard v. Sullivan, 733 F.Supp. 1465, 1468 (M.D.Fla. 1990) (stating that the two agencies impose different standards, without more, may not sufficiently justify the rejection of VA rating); see also Pearson v. Astrue, 271 Fed.Appx. 979, 981 (11th Cir.2008); Monigan v. Colvin, No. CA 14-0010-C, 2014 WL 5323099, at *8 (S.D. Ala. Oct. 17, 2014) (finding ALJ specifically explained reasons for rejecting VA rating because (1) ALJ stated standard for VA disability is different than standard for Social Security Act and (2) RFC determination was consistent with VA's medical records.) However, an ALJ does not err if the context of the decision indicates that the ALJ implicitly made a finding about the VA disability rating. See Kemp, 308 Fed. Appx. at 426.

Here, the ALJ expressly addressed the VA impairment rating, noting that Plaintiff had an overall combined rating of 100%. R. 32. However, the ALJ implicitly gave the rating less than considerable weight because the VA's rating (1) was based on a different legal framework and standard that is not binding on the Social Security Administration, and (2) appeared to be based on the opinions of Plaintiff's treating physicians, Drs. Huff and Cheng, to which the ALJ properly gave only some weight. R. 32. The ALJ sufficiently justified her decision to reject the VA disability rating by carefully analyzing the evidence of record related to the rejected rating.

With respect to Dr. Huff, Plaintiff's treating psychiatrist, the ALJ gave some weight to her opinion that Plaintiff "has severe PTSD and is not able to work, socialize with people

6

and is unemployable due to his condition." R. 32, 277, 427, 441, 757. The ALJ provided good cause for giving Dr. Huff's opinion only some weight because Dr. Huff had not provided any specific functional limitations that would prevent the claimant from working. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (treating physician's opinion may be properly discounted if unsupported by objective medical evidence, merely conclusory, or inconsistent with physician's medical record). The ALJ also found that Dr. Huff's bare, generalized, and unsupported conclusion was contradicted by other evidence in the record, including that Plaintiff had been able to attend medical appointments, socialize with family and friends, shop, drive, and care for his father who suffered a stroke. R. 31, 32, 64, 196-203, 353, 397, 789; see Lewis, 125 F.3d at 1440.

With respect to Dr. Cheng, Plaintiff's treating physician, the ALJ gave some weight to her opinion that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit and stand/walk for about four hours each, would require unscheduled breaks of two to four hours, and would be absent from work four days a month due to his impairments. R. 32, 760-64. The ALJ provided good cause for giving Dr. Cheng's opinion only some weight because it was inconsistent with x-rays showing no more than moderate degenerative changes in Plaintiff's left ankle and normal studies of his lumbar spine and left knee. See R. 32-33, 347; Lewis, 125 F.3d at 1440. The ALJ also concluded that Dr. Cheng's opinion was not consistent with physical examinations showing Plaintiff had: (1) full range of motion in his neck and left lower extremity; (2) some reduced range of motion in his back, upper extremities, and right knee; (3) 5/5 grip strength and motor strength, except in his right lower extremity where he had 4/5 motor strength; (6)

7

normal deep tendon reflexes; and (7) intact sensation and cranial and cerebellar nerves. R. 32-33, 345, 346, 347, 406-407, 816.

Plaintiff asserts the ALJ erred in finding that the VA rating was based on opinions from Drs. Cheng and Huff, because instead the VA rating was based on opinions from the following consulting physicians: (1) Dr. Gregory T. Teel; (2) Edgar R. Bohannon, an audiologist; and (3) Dr. Valerie L. McCray. (Pl's Br., p. 20.) While the VA impairment rating considered the opinions from consultative examiners Drs. Teel, Bohannon, and McCray, it did not rely exclusively on them. R. 147-60. As the VA decision states, the evidence considered includes, "Treatment reports from the VA Medical Center in Augusta, Georgia, from May 25, 2011, through September 23, 2011" and "Treatment reports from the VA Medical Center in Augusta, Georgia, from October 6, 2010, through May 29, 2012." R. 147- 48. Both Drs. Huff and Cheng treated Plaintiff at VA medical centers in Augusta, Georgia, and the evidence from Dr. Huff was dated from 2011 and 2012, and the evidence from Dr. Cheng was dated from 2009 through 2012. R. 271, 277-87, 294-302, 396, 400-14, 424-36, 441-52, 627. Accordingly, the ALJ did not err in finding that the VE impairment rating was based in part on the opinions from Drs. Cheng and Huff.

In his reply brief, for the first time, Plaintiff asserts that, even if the VA rating was based in part on opinions from Drs. Cheng and Huff, the ALJ erred because he did not acknowledge that it was also based on the reports of Drs. Teel, Bohannon, and McCray. (Doc. no. 13, ("Reply"), pp. 3-4.) However, Plaintiff ignores that the opinions from Drs. Teel, Bohannon, and McCray were not in the administrative record before the ALJ such that the ALJ could not have considered these opinions. It is Plaintiff's duty to develop the record

8

to establish the existence of a disability. See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007). The Eleventh Circuit has explained that the ALJ is not required to seek additional evidence so long as the record contains sufficient evidence allowing him to make an informed decision. See e.g., id. Here, the ALJ made an informed decision based on his evaluation of the VA rating and the extensive records from Plaintiff's treating physicians.

In sum, the ALJ properly evaluated the VA disability rating and implicitly found that it was not entitled to great weight because the opinions of the treating physicians upon which the VA relied in making the determination were not entitled to substantial weight. The ALJ stated sufficient, good cause for not giving the opinions of those treating physicians substantial weight.

### B. The ALJ Properly Discredited Plaintiff's Subjective Testimony Regarding His Limitations.

Plaintiff argues the ALJ erroneously discredited Plaintiff's testimony concerning his pain and limitations by (1) requiring objective evidence of his pain, (2) ignoring or downplaying evidence that supported Plaintiff's testimony, and (3) relying too heavily on evidence concerning activities of daily living. (Pl's Br., pp. 21-24.) To make the threshold showing of validity for subjective complaints, a plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear

9

as to amount to a specific credibility finding." Foote, 67 F.3d at 1561-62.

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980). As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the District Court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer, 395 F.3d at 1210-11 (internal quotation marks and citations omitted). The ALJ's detailed analysis of Plaintiff's credibility far surpasses this minimum standard.

Plaintiff testified that pain in his knees, left ankle, and back, and limitations from his PTSD render him unable to work. R. 29-30. The ALJ extensively discussed Plaintiff's treatment and determined that substantial evidence undermined his allegations of disabling pain and mental limitations, including: (1) objective and diagnostic medical evidence in connection with Dr. Reginald Brown's February 2012 consultative examination; (2) Plaintiff's minimal, conservative, and routine treatment for his knee and back pain; (3) Plaintiff's significant social and cognitive abilities despite his mental impairments; (4) evidence indicating medication improved Plaintiff's mental health symptoms; (5) Plaintiff's alcohol abuse exacerbated his symptoms; and (6) Plaintiff's daily activities as stated in his function report and medical examinations. R. 30-31. These six reasons constitute

substantial, explicit, and adequate evidence to discredit Plaintiff's subjective complaints of disabling pain and mental limitations.

More specifically, Plaintiff asserts that the ALJ erred because he "downplayed" Dr. Brown's findings with respect to Plaintiff's back, upper extremities, left ankle, and right knee and ignored evidence from a physical therapy evaluation that corroborated these findings. (Pl's Br., p. 22.) Specifically, with respect to his back, Dr. Brown stated in his February 2012 consultative examination that Plaintiff "can dress and undress with some difficulty," was only able to bend twenty degrees with pain, wore a back brace, and straight leg raise tests in both legs showed back pain. R. 345. On April 10, 2013, a physical therapy initial evaluation concluded that Plaintiff should avoid bending and lifting because Plaintiff had seventy-five percent flexion loss in his lumbar spine, and no extension in his lumber spine. R. 778-79, 795-97. Dr. Brown stated that Jones had decreased range of motion in his upper extremities and "[l]ifting the arms above the level of the shoulders is not possible due to significant pain." R. 345. With respect to his lower extremities, Dr. Brown found that Plaintiff had pain in his left ankle, decreased range of motion in his right knee "due to exquisite pain," and he wore a knee brace. Id.

Contrary to Plaintiff's assertion, the ALJ acknowledged these findings but found that the overall diagnostic and objective evidence did not corroborate the disabling pain Plaintiff alleged. R. 27-28, 30-31. Indeed, the ALJ noted Dr. Brown's finding that Plaintiff's "spine was straight with some decreased range of motion and tenderness," but also noted Dr. Brown's findings that Plaintiff's deep tendon reflexes were present and normal, and his sensory and cerebellar nerves were intact. R. 30, 345. The ALJ also noted

11

Dr. Brown's finding that Plaintiff had decreased range of motion in his upper extremities, but also pointed out that Plaintiff's grip strength was full and he had full motor function. Id. Lastly, with respect to Plaintiff's lower extremities, the ALJ acknowledged the decreased range of motion in Plaintiff's right knee, but also noted Plaintiff had only decreased strength in his right lower extremity, full range of motion and only mild pain in his left knee, full range of motion in his feet and ankles, and full strength in his left lower extremity. Id. Most importantly, the ALJ noted that x-rays ordered by Dr. Brown showed a "normal study" of Plaintiff's left knee and lumbar spine, a previous anterior cruciate repair of his right knee but no acute or chronic current abnormality, and only mild degenerative changes of the left ankle. R. 347-49.

Plaintiff next asserts that the ALJ mischaracterized treatment for his knee and back pain as "minimal" even though he had received physical therapy in 2007 and 2013, had two surgeries on his right knee, and was prescribed braces for his knees and back, a cane to help him walk, muscle relaxants, and pain medication. (Pl's Br., p. 23.) Once again, the ALJ acknowledged all of this evidence, including Plaintiff's use of a cane, knee brace, back brace, physical therapy, and pain medication, R. 25, 27-29, but found that overall Plaintiff's treatment for his knee and back pain was minimal, conservative, and routine, which suggested Plaintiff's pain was tolerable, R. 31. Indeed, the ALJ noted that Plaintiff had not had back surgery, received steroid injections, or used a TENS unit, nor had any of these more serious treatments been recommended. R. 31. Additionally, Plaintiff only re-started physical therapy in 2013, several years after his alleged onset date, and six years after he had first reported receiving physical therapy in 2007. R. 52-54, 784, 803-04.

Moreover, the ALJ noted that during the relevant period, Plaintiff had only been to the emergency room one time with complaints related to his back pain when a relative fell on him during a "wrestling match/altercation" in April 2011. R. 27, 546-49. As the ALJ noted, the remainder of his medical care for his allegedly disabling physical conditions from March 2011 through February 2013 were routine follow-ups for checkups and medication maintenance. R. 27-28, 267-72, 403-13, 429-36, 519-23, 564-73, 733-41, 812-21, 835-39. The Eleventh Circuit has stated "[a] doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." Sheldon v. Astrue, 268 Fed. App'x 871, 872 (11th Cir. 2008). Furthermore, Plaintiff ignores that the RFC determination includes the use of a cane. R. 24.

With respect to Plaintiff's mental impairments, Plaintiff asserts that the ALJ ignored the "wealth" of evidence regarding Plaintiff's PTSD symptoms from his VA treatment notes, including recurring episodes of isolation, avoidance, excitement in fighting, intrusive memories, hypervigilance, anxiety, irritability, aggressiveness, and anger, that have resulted in maladaptive social functioning and numerous altercations. (Pl's Br., p. 23.) Plaintiff also contends that the ALJ ignored that he has poor coping skills. (Id.) The ALJ extensively discussed Plaintiff's mental health treatment records, but found that Plaintiff's mental impairments were not as disabling as alleged because his mental health status examinations reveal that "while [Plaintiff] might be depressed or anxious at times, he retains significant cognitive and social abilities." R. 25-27, 31. Indeed, his mental status examinations routinely showed Plaintiff (1) remains cooperative with good eye contact; (2) has normal speech; (3) has linear and goal-directed thought processes; (4) remains oriented; (5) exhibits

good attention and concentration; (6) has normal memory; (7) denies delusions, hallucinations, and suicidal ideation; (8) has fair insight; and (9) has fair judgment. R. 31, 312, 807, 827-28, 854. Additionally, the evidence Plaintiff cites in support of his PTSD symptoms are actually Plaintiff's subjective reports to physicians, while the ALJ cited the physician's objective examination notes from these records. See id.

Additionally, the ALJ observed that, while Plaintiff's medical records demonstrate improvement of Plaintiff's symptoms when he took his medication, Plaintiff was not always compliant with his treatment, including failing to take medications, do homework for therapy sessions, missing therapy sessions, and not participating in therapy sessions. R. 26-27, 31, 275, 305, 788-89, 830, 833. Plaintiff also stated that he began drinking more when he stopped attending therapy. R. 31, 789, 844. It is well-established in the Eleventh Circuit that a plaintiff's noncompliance with prescribed treatment is a factor for discounting allegations of disability. See 20 C.F.R. § 416.930 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled...."); see also Delmonte v. Comm'r, Soc. Sec. Admin., 585 F. App'x 774, 776 (11th Cir. 2014).

Lastly, Plaintiff asserts that the ALJ improperly described his daily activities as substantial because his testimony and function report indicate that: (1) he isolated himself; (2) his performance of activities were dependent on his mood; (3) there were days he would either not get out of bed or lay on the couch sleeping; (4) some days he would just sit and stare at the walls; (5) he had several altercations with others; and (6) he cannot go shopping unless he is with someone he trusts. The ALJ found this testimony to be contradicted by Plaintiff's self-prepared function report and statements made in the context of his medical

examinations. R. 31. Indeed, Plaintiff has reported at times that he (1) has no problems with personal care; (2) can prepare his own meals; (3) cleans; (4) does laundry; (5) does yard work; (6) drives; (7) uses the computer; (8) shops for groceries and clothes; (9) attends doctor's appointments; (10) watches television; (11) visits with at least one friend; and (12) has traveled out of town. R. 31, 62-63, 196-203, 353. Additionally, Plaintiff reported to Dr. Huff in March 2012 and psychologist Dr. Christopher Slaughter in October 2012 that he was caring for his father who recently had a stroke, even going so far as to describe himself as his father's "caretaker." R. 31, 396, 788-89. Accordingly, the ALJ properly considered that Plaintiff's daily activities were not consistent with his allegations of disabling symptoms. See 20 C.F.R. § 404.1529; Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987).

In sum, the ALJ properly reviewed Plaintiff's allegations of total disability and properly found, based on substantial evidence, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the record. See Holt, 921 F.2d at 1223; Foote, 67 F.3d at 1561-62; Dyer, 395 F.3d at 1210-11.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 31st day of March, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA